Docusign Envelope ID: E4030ED3-FDBA-84B3-80D9-20A033B135D2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| SHENZHENSHIBAIRIHONGMAOYIYOUX § ANGONGSI, § Plaintiff, § § v. § § NOVOLUTO GMBH, § Defendant. § § § | Civil Action No. 3:25CV844 (RCY) |

**DECLARATION OF STEPHANIE KEATING IN SUPPORT OF
NOVOLUTO'S MOTION FOR PRELIMINARY INJUNCTION**

I, Stephanie Keating, am over the age of 18 and competent to give this Declaration, all information contained herein is based on my personal knowledge, and I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

**I. BACKGROUND**

1. My name is Stephanie Keating. I am the Sales and Marketing Director for the Americas at Lovehoney Group, a position I have held since August 2022. In this role, I am responsible for sales strategy, marketing, distribution, customer relationship management, pricing, competitive intelligence, and brand development for all Lovehoney Group brands in the Americas region, including Womanizer® and other Lovehoney-branded products.

2. Before my current role, I served as Marketing Director for the Americas at Lovehoney Group from August 2021 to October 2022. Prior to that, I held positions of increasing responsibility at WOW Tech Group, Lovehoney Group's predecessor, from January 2021 to September 2021 (Marketing Director, Americas), and at We-Vibe from September 2011 to January 2021, where I progressed from Marketing Specialist to Marketing Manager. In total, I have approximately fifteen years of continuous experience in the sex toy industry, with direct responsibility for sales and marketing of our patented products.

1

3. I hold a Bachelor of Business Administration from Brock University. I have extensive experience in all forms of marketing for sexual toy products, including digital marketing, print advertising, business-to-business marketing, trade shows, retailer education and training programs, co-operative advertising with retail partners, and Amazon marketplace strategy. I have also been directly involved in negotiating and managing supply agreements with distributors and retailers across the Americas.

4. I make this declaration based on my personal knowledge. I am competent to testify to the matters set forth herein, and if called as a witness, I could and would testify competently to the same.

## II. NOVOLUTO, THE LOVEHONEY GROUP, AND THE '851 PATENT

5. Novoluto GmbH ("Novoluto") is the owner of U.S. Patent No. 9,763,851 (the "'851 Patent"), which protects the Pleasure Air$^{®}$ stimulation technology that Novoluto's founder invented. Pleasure Air$^{®}$ technology uses modulated positive and negative air pressure to create a unique form of sexual stimulation. It was the first technology of its kind and created an entirely new product category in the sex toy industry. When the Womanizer$^{®}$ first hit the market, it stood out as a game changer for the industry, a completely new and innovative device. There is not a lot of innovation in the sex toy industry; there is a great deal of copying and cheap knockoffs. So when something truly innovative hits the market, it is immediately recognizable.

6. Novoluto is part of the Lovehoney Group of companies. Novoluto's role within the Lovehoney Group is as the technology and intellectual property holder—it developed and owns the Pleasure Air$^{®}$ technology and the patents that protect it, including the '851 Patent. Other Lovehoney Group companies commercialize Novoluto's patented technology through the sale of products under the Womanizer$^{®}$ and other Lovehoney brands.

7.    The commercial embodiments of the '851 Patent—the Womanizer® and other Lovehoney-branded Pleasure Air® technology products—are manufactured, distributed, and sold through other Lovehoney Group entities.  Revenue generated from the sale of these products flows through the Lovehoney Group back to Novoluto through an inter-company agreement that allocates royalties based on worldwide revenue generated by the relevant products.  Novoluto's revenue is therefore directly tied to and dependent upon the commercial success of the Womanizer® and other Lovehoney-branded products that embody the '851 Patent.  When sales of those products decline, Novoluto's revenue declines.  When the brand reputation associated with those products is damaged, the value of Novoluto's patent and technology is diminished.

8.    The commercial embodiments of the '851 Patent include, among others, the Womanizer® Classic, Rose, Premium, Starlet, Pro, InsideOut, and Duo.  The Womanizer® brand has achieved widespread recognition in the United States and internationally as the originator of Pleasure Air® technology.

## III.    INVESTMENT IN THE WOMANIZER BRAND AND PLEASURE AIR® TECHNOLOGY

9.  The Lovehoney Group has invested substantial resources in developing, manufacturing, marketing, distributing, and advertising products protected by the '851 Patent.  Since I joined the predecessor entity in 2011, I have personally been involved in building the brand equity that the Womanizer® and related brands enjoy today.  Our marketing efforts have included digital and online advertising, Amazon marketplace advertising, print advertising, influencer partnerships, retail partnerships, trade show participation, public relations campaigns, educational webinars for distributors and retailers, retailer training programs, and co-operative advertising with retail partners.

10.  The Lovehoney Group has invested in educating our distribution and retail partners

about the value of innovation and the importance of the patented Pleasure Air® technology. I have personally organized and led educational webinars for our distributors and retailers to help them understand the technology, the patent protection behind it, and the importance of supporting genuine innovation rather than cheap knockoffs. These investments have been critical to building the brand loyalty and consumer trust that our products enjoy today.

11. Lovehoney Group maintains stringent quality control and safety standards for all products sold under the Womanizer® and other Lovehoney brands. These standards ensure that consumers who purchase products protected by the '851 Patent receive products that meet strict quality and safety expectations. The reputation for quality, innovation, and safety associated with the Womanizer® brand is a critical business asset that has taken years and substantial investment to build.

12. Our products are sold through authorized distributors and retailers, including online through Amazon. Amazon is a significant sales channel for the Womanizer®. I am involved with our Amazon marketplace strategy, including pricing, advertising, product listings, and competitive positioning.

## IV. BAIRIHONG'S INFRINGING PRODUCTS AND COMPETITIVE OVERLAP

13. I am aware that Shenzhenshibairihongmaoyiyouxiangongsi ("Bairihong") sells various rose shaped sex toy products on Amazon, including under ASIN B0BB1VX77W ("Bairihong's Products"), through its Amazon storefront "linshaihongdianpu." I understand from Novoluto's technical analysis and expert materials in this case that Bairihong's Products incorporate the technology claimed by the '851 Patent.

14. Bairihong's Products directly compete with Novoluto's Womanizer® products on Amazon. Specifically, Bairihong's Products appear in the same Amazon search results, the same

product category, and target the same consumer as our products. When a consumer searches for terms such as "clitoral suction toy" or "rose vibrator" on Amazon, both Novoluto's genuine products and Bairihong's Products appear in the results. The competitive overlap exists precisely because Bairihong's Products incorporate Novoluto's patented Pleasure Air® technology—the core feature that drives consumer demand in this product category.

15.  Bairihong's Products are sold at approximately $20-30 per unit, much less than Novoluto's products, which typically retail between approximately $49 and $199. The higher price of our products can be attributed to our significant investment in research and development of the patented technology and dedication to high quality. This significant price differential allows Bairihong to attract price-sensitive consumers away from genuine Novoluto products by offering a product that uses the same patented technology at a steep discount.

16.  I understand from publicly available information that Bairihong has sold its Products on Amazon under multiple ASINs, including at least ASIN B0BB1VX77W. The use of multiple ASINs for substantially identical products complicates enforcement and allows infringing sales to persist even when individual listings are targeted.

17.  Moreover, Bairihong is not the only seller offering products under ASIN B0BB1VX77W. Multiple different sellers offer the same or substantially identical products under that ASIN. Novoluto was in the process of pursuing Amazon APEX enforcement against sellers under ASIN B0BB1VX77W when Bairihong filed this lawsuit in October 2025, which caused Amazon to suspend the APEX proceedings. As a result, Novoluto has been unable to obtain enforcement relief against any seller of infringing products under that ASIN or any other ASIN during this litigation—compounding the harm from Bairihong's own infringing sales with the continued infringing sales of other sellers that Novoluto can no longer address through Amazon's

enforcement mechanisms.

## V. IRREPARABLE HARM TO NOVOLUTO FROM BAIRIHONG'S INFRINGING SALES

18. **Lost Sales, Market Share Erosion, and Price Erosion.**

The continued sale of Bairihong's infringing Products on Amazon has caused and continues to cause direct harm to the commercial embodiments of the '851 Patent. The proliferation of cheap knockoff products on Amazon, including Bairihong's Products, has negatively impacted the sales performance of our Womanizer® products. Specifically:

- Our Womanizer® products compete directly with Bairihong's Products in the same Amazon search results, the same product category, and for the same consumer. When a consumer searches for rose sex toy products on Amazon, they are presented with our genuine products at premium price points alongside Bairihong's Products at a fraction of the price.

- The significant price differential between our products and Bairihong's Products diverts price-sensitive consumers away from our products. Each sale of an infringing Bairihong Product is a sale that could have gone to a genuine Womanizer® product—or at a minimum, a sale that erodes the perceived value of our brand and technology.

- We have experienced downward pressure on our pricing and have been required to increase our Amazon advertising spend to maintain visibility against the growing volume of cheap knockoff products, including Bairihong's. This increased cost of competing reduces our margins and the revenue that ultimately flows back to Novoluto. Price erosion on Amazon also results in price erosion through the rest of the market because retailers and distributors see the cheap knockoff prices on

Amazon and want to be competitive.

19. **Amazon Platform Dynamics and Compounding and Irreversible Harm.** Amazon's marketplace rewards products with higher sales velocity by giving them better placement in search results, higher rankings, and greater visibility, which in turn drives further sales. This creates a self-reinforcing cycle. Every sale Bairihong makes of its Products contributes to those products' ranking and visibility on Amazon, while simultaneously reducing the relative ranking and visibility of our competing Womanizer® products. This means the harm compounds over time: the longer Bairihong's infringing products remain on the platform, the more entrenched they become in Amazon's algorithm, and the harder it becomes for our products to recover their prior position—even after the infringing sales stop.

20. Bairihong has acknowledged these very dynamics. In its Complaint, Bairihong alleged that removal of its products from Amazon would cause "future reduced listing profile" because the product link would become "less active, and therefore lower ranked," and that this damage is "irreparable." Dkt. 1 at ¶¶ 24–25. The same platform dynamics that Bairihong mentions to protect its own listings apply in reverse to Novoluto. Bairihong's continued infringing sales degrade Novoluto's listing profile, rankings, and visibility in ways that are equally irreparable.

21. This platform-driven harm cannot be remedied by money damages after the fact. You cannot write a check to restore an Amazon ranking. The algorithm responds to real-time sales velocity, review count, listing history, and consumer engagement. Once those metrics are degraded, they cannot be reconstructed through a damages award. The harm to our Amazon position is ongoing and will continue to worsen every day that Bairihong's Products remain on the platform.

22. **Loss of Goodwill, Brand Confidence, and Quality Control.** The sale of Bairihong's

7

Products, which incorporate the patented Pleasure Air® technology, causes direct harm to the goodwill and brand reputation that the Lovehoney Group has spent years and substantial resources building. Consumers who purchase Bairihong's Products may believe they are purchasing genuine products or products of equivalent quality. When those products fail to meet the quality and safety standards that consumers expect from Pleasure Air® products, the resulting negative experiences damage the reputation of the entire product category that Novoluto pioneered.

23. Novoluto has no control over the materials, manufacturing processes, quality testing, or safety standards used in Bairihong's Products. Our products undergo rigorous quality control and safety testing. When consumers purchase cheap knockoffs like Bairihong's Products that use our patented technology but do not meet our quality standards, it damages the reputation of the technology and the brands associated with it. This brand damage and loss of consumer trust is difficult to quantify and cannot be fully restored through monetary damages.

24. In my experience, we have received customer inquiries and complaints from consumers who purchased knockoff clitoral stimulation products—including rose-shaped devices like Bairihong's—and attributed their negative experience to the Pleasure Air® product category generally or to the Womanizer® brand specifically. For example, we have received complaints about knockoff products being filled with mold due to not being waterproof, lack of stimulation due to low quality materials being used, dye rubbing off, and devices overheating and catching fire. Negative reviews of knockoff products in our product category on Amazon also damage the overall perception of the category we created, reducing consumer confidence in all Pleasure Air® products, including our genuine products.

25. **Inadequacy of Monetary Damages and Risk of Non-Collection.** Based on my experience in this industry and my direct knowledge of the Amazon marketplace, I do not believe

that the harm Novoluto is suffering from Bairihong's continued sale of infringing products can be adequately remedied by money damages. The full scope of the harm, including lost Amazon rankings and visibility, eroded brand equity, damaged consumer trust, diverted sales, and the compounding platform effects I have described—cannot be captured in a dollar figure. Even if a monetary judgment were obtained against Bairihong, it would not restore Novoluto's lost market position, rankings, or brand equity on Amazon.

26. In my experience with similarly situated foreign companies selling knockoff products, there are serious concerns about whether a monetary judgment against Bairihong could even be collected. Enforcement challenges the company has undertaken against foreign sellers on Amazon confirm that monetary damages are inadequate and that there is a substantial risk Bairihong will be unable to satisfy a future money judgment or will simply evade paying such judgment by changing its name, entity status, or shifting assets to other entities unknown to us.

27. **Harm Flows Directly to Novoluto as Patent Owner.** Although Novoluto does not directly sell consumer products, the harm caused by Bairihong's infringing sales flows directly to Novoluto. Novoluto's revenue is derived from the commercial success of the Womanizer® and other Lovehoney-branded products that are protected by the '851 Patent. Revenue from sales of those products flows through the Lovehoney Group to Novoluto. When sales of those products decline due to competition from Bairihong's Products, Novoluto's revenue declines. When the brand reputation associated with those products is damaged, the value of Novoluto's patent and technology—its core assets—is diminished. Novoluto's entire business model depends on the exclusivity and commercial value of its patented technology. Every unauthorized product that enters the market erodes that exclusivity and diminishes the value of the '851 Patent.

## VI.  BALANCE OF EQUITIES

28.  The harm that Novoluto and the Lovehoney Group are suffering from Bairihong's continued sale of infringing products is real, ongoing, and compounding.  Every additional day that Bairihong's Products remain on Amazon erodes our market position, damages our brand, and makes recovery more difficult.  The Womanizer® brand represents years of investment, innovation, and brand building.  That investment is being undermined by Bairihong's sale of cheap knockoffs that free-ride on our patented technology.

29.  The only "harm" to Bairihong from an injunction would be the loss of revenue from sales of products that infringe Novoluto's patent.  A seller that builds its entire business around a product line that infringes another company's patent assumes the risk that it may be enjoined from continuing those sales. By contrast, Novoluto's harm is not limited to lost revenue.  It includes loss of exclusivity, erosion of Amazon ranking, harm to brand reputation, and reduced value of patented technology in the entire market (not just on Amazon).

30.  Novoluto was actively pursuing enforcement against infringing sellers on Amazon through Amazon's APEX program before this litigation was initiated.  Bairihong filed this lawsuit on October 9, 2025—the day after Amazon notified Novoluto that at least one seller had agreed to participate in the APEX proceeding.  Amazon suspended the APEX proceedings because it had been notified of pending litigation.  The filing of this lawsuit prevented and continues to prevent Novoluto from obtaining enforcement relief not only against Bairihong under ASIN B0BB1VX77W, but against any Amazon seller offering infringing products under any ASIN.  As a result, infringing products that otherwise could have been removed from Amazon have remained available, continuing to divert sales, alter ranking history, accumulate reviews, and displace Novoluto's products in Amazon search results.

31.  While Lovehoney is larger than Bairihong, this does not make the harm any less real. The harm is to Novoluto's specific product lines, Amazon rankings, and brand reputation in the Americas market—which is my direct responsibility.  A large parent company cannot write a check to restore a lost Amazon ranking or rebuild consumer trust that has been eroded by knockoff products.  The nature of the harm is irreparable regardless of the size of the entity experiencing it.

## VII.  PUBLIC INTEREST

32.  The public interest is served by protecting patent rights and the innovation they incentivize.  The '851 Patent protects a revolutionary technology that created an entirely new product category.  Allowing Bairihong to continue selling cheap knockoffs on Amazon undermines the incentive to innovate, rewards copying over creativity, and exposes consumers to products that have not undergone the quality control and safety testing that Novoluto requires for its authorized products.

33.  The public also has an interest in marketplace integrity.  An injunction would serve the public interest by removing infringing products from the marketplace, stopping deceptive listing practices, and restoring fair competition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 3, 2026.

DocuSigned by:

*Stephanie Keating*

1BA36F7798C748D

Stephanie Keating
Sales and Marketing Director, Americas
Lovehoney Group

11

![Docusign](docusign logo)

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: E4030FD3-FDBA-84B2-80D9-20A033B135D2 | | Status: Completed |
| Subject: Complete with Docusign: 2026-06-03 Declaration of S. Keating.pdf | | |
| Source Envelope: | | |
| Document Pages: 11 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Kelly Cannon |
| AutoNav: Enabled | | Meridian, 17th Fl. |
| EnvelopeId Stamping: Enabled | | Columbia, SC  29201 |
| Time Zone: (UTC-05:00) Eastern Time (US & Canada) | | kelly.cannon@nelsonmullins.com |
| | | IP Address: 65.59.56.58 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Kelly Cannon | Location: DocuSign |
| 6/3/2026 5:15:05 PM | kelly.cannon@nelsonmullins.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Stephanie Keating<br>stephanie.keating@lovehoneygroup.com<br>Director Sales and Marketing<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>*Stephanie keating*<br>1BA36F7798C748D...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address:<br>2605:b100:d15:e399:3980:3f89:5a34:8bfd<br>Signed using mobile | Sent: 6/3/2026 5:17:15 PM<br>Viewed: 6/3/2026 6:00:56 PM<br>Signed: 6/3/2026 6:01:06 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 6/3/2026 6:00:56 PM<br>ID: a2817847-4213-4df9-8e80-95c8d664776d | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Kelly Cannon<br>kelly.cannon@nelsonmullins.com<br>Nelson Mullins Riley & Scarborough, L.L.P.<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 6/3/2026 5:17:16 PM |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via Docusign | | |
| Tammy Terry<br>tammy.terry@nelsonmullins.com<br>Non-Equity Partner<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 6/3/2026 5:17:16 PM |
| **Electronic Record and Signature Disclosure:**<br>Not Offered via Docusign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | 6/3/2026 5:17:16 PM |
| Certified Delivered | Security Checked | 6/3/2026 6:00:56 PM |
| Signing Complete | Security Checked | 6/3/2026 6:01:06 PM |
| Completed | Security Checked | 6/3/2026 6:01:06 PM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**